The St. Louis Railroad Company, Appellant, *v.* The Northwestern St. Louis Railway Company, Respondent.

### April 25, 1876.

1. It appears that, under "An act to authorize the formation of railroad associations, and to regulate the same," approved December 13, 1855, it was competent to organize a street railway company in the city of St. Louis. But, in any event, such a company having been constituted under the forms prescribed in said act, an act of the General Assembly, approved January 16, 1860, recognizing the corporate organization, and defining its powers, etc., was effectual to place the existence of the corporation beyond question. Such an act was not "retrospective in operation."

2. Section 3 of an act of the General Assembly provides: "No street railway shall hereafter be constructed  *  *  *  nearer to a parallel road than the third parallel street from any road now constructed, or which may hereafter be constructed, except the roads hereinbefore mentioned." *Held,* that the true interpretation permits the construction of a railway nearer than the third parallel street from one of "the roads hereinbefore mentioned;" but forbids such construction within that distance from any other.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*Glover & Shepley,* for appellant, cited: Emfield Toll Bridge Co. *v.* Hartford Toll Bridge Co., 17 Conn. 40; Hartford Bridge Co. *v.* East Hartford, 16 Conn. 149; Pesquatequa Bridge Co. *v.* Bridge Co., 7 N. H. 35; Boston & Lowell R. R. Co. *v.* Salem & Lowell R. R. Co., 2 Gray, 1; Washington Bridge Co. *v.* The State, 18 Conn. 53; Fort Plain Bridge Co. *v.* Smith, 30 N. Y. 44; Binghampton Bridge Co., 3 Wall. 51; Home of the Friendless *v.* Rowse, 8 Wall. 438; Washington University *v.* Rowse, 8 Wall. 440; Dartmouth College *v.* Woodward, 4 Wheat. 518; Piqua Branch State Bank of Ohio *v.* Knoop, 16 How. 369; Dodge *v.* Wolsey, 18 How. 331; Jefferson Branch Bank *v.* Shelby, 1 Black, 436; Franklin Branch Bank *v.* Ohio, 1 Black, 474; Washington Bridge Co. *v.* The State, 18 Conn. 53.

*Jacob Klein* and *Hitchcock, Lubke & Player,* for respond-

ent, cited : McCandle's Appeal, 70 Pa. St. 210, 214,.
217 ; Ancient City Sportman's Club v. Miller, 7 Lans. 412 ;.
People ex rel. v. Nelson, 46 N. Y. 477 ; Session Acts 1858–9,.
p. 165, sec. 22, pp. 171, 443, sec. 3, p. 444 ; Cooley's
Const. Lim. 191, 192, 195, 207, 281, 282, 283, 396 ; 1
Dill. on Mun. Corp., secs. 46, 55 (and note), 61, 296 (and
note), 387 ; Illinois, etc., Canal Co. v. St. Louis, 2 Dill.
70 ; City of St. Louis v. Grone et al., 46 Mo. 574 ; Booth.
v. Town of Woodbury, 32 Conn. 118 ; Webster v. Town
of Harwinter, 32 Conn. 131 ; Leavenworth v. Norton, 1
Kan. 432 ; Kyle v. Malin, 8 Ind. 34 ; Hitchcock v. St.
Louis, 49 Mo. 484 ; People's R. R. Co. v. Memphis R. R.
Co., 10 Wall. 38, 50, 52, 53 ; Witham v. Sharp, 17 Barb.
435 ; 18 Barb. 228 ; 27 N. Y. 611 ; Davis v. Mayor, etc.,
14 N. Y. 506 ; State v. Mayor, etc., 3 Duer, 119 ; Lack-
land v. North Missouri R. R. Co., 31 Mo. 180, 187 ; 1 Redf.
on Rys. (5th ed.), secs. 258, 319, 320, 333 ; 2 Dill. on Mun.
Corp., sec. 575 ; City v. Laughlin, 49 Mo. 559 ; Ruggles &
Bigler v. Collier, 43 Mo. 353 ; San Francisco & Oakland
R. R. Co. v. Oakland, 43 Cal. 502 ; Morris & Essex R. R.
Co. v. City of Newark, 2 Stock. 352 ; Collins v. Hatch, 18.
Ohio, 523 ; Rev. Stat. 1855, pp. 425, 1027 ; Sedgw. on
Stat. and Const. Law (2d ed.), 141 (note), 143 ; People v.
Law, 34 Barb. 494 ; Peterson v. Mayor, etc., 17 N. Y.
449, 454 ; Const. of Mo. 1820 ; Rev. Stat. 1855, p. 85,.
sec. 17 ; City v. Clemens, 52 Mo. 133 ; State v. Auditor,.
33 Mo. 287 ; Hope Mutual Ins. Co. v. Flynn, 38 Mo. 483 ;.
Brutsang v. Wolf, 35 Mo. 174 ; McManning v. Farrar, 46.
Mo. 376, 377 ; 1 Am. Law Reg. (N. S.) 193, 201, 205, 207 ;.
2 Greenl. Cruise on R. Prop. 67 ; 3 Pars. on Con. (6th ed.),
secs. 539, 541 ; West River Bridge Co. v. Dix, 6 How. 533 ;
Matheny et al. v. Goldens, etc., 5 Ohio St. 375 ; Illinois &.
Michigan Canal v. Chicago & Rock Island R. R. Co., 14 Ill.
314 ; Mott v. Pennsylvania R. R. Co., 30 Penn. St. 9 ;
Louisville City Ry. v. Louisville, 8 Bush, 415 ; City of St.
Louis v. Manufacturers' Savings Bank, 49 Mo. 574 ; City

of St. Louis *v.* Life Association of America, 53 Mo. 466;
Commissioners *v.* Northern Liberties Gaslight Co., 12 Pa.
St. 318; Frankford, etc., R. R. Co. *v.* Philadelphia, 58
Pa. St. 119; Commonwealth *v.* Pennsylvania Coal Co.,
66 Pa. St. 41; Cooley's Const. Lim. (3d ed.), secs.
394, 395; West End & Atlanta St. R. R. Co. *v.* Atlanta
R. R. Co., 49 Ga. 151; Chenango Bridge Co. *v.* Binghamp-
ton Bridge Co., 27 N. Y. 87, 102, 103; Rice *v.* R. R. Co.,
1 Black, 358; Auburn & Cato Plank Road Co. *v.* Douglas,
9 N. Y. 444, 452; Louisville & Portland R. R. Co. *v.* Louis-
ville City R. R. Co., 2 Duv. 175; Oakland R. R. Co. *v.*
Oakland, Brooklyn, etc., R. R. Co., 45 Cal. 365, 378;
Norwich Gaslight Co. *v.* Norwich City Gaslight Co., 25
Conn. 19; State *v.* Cincinnati Gaslight and Coke Co., 18
Ohio St. 262; Charles River Bridge Co. *v.* Warren Bridge
Co., 11 Pet. 420; Tuckahoe Canal Co. *v.* Tuckahoe &
James River R. R. Co., 11 Leigh, 42; Illinois & Michigan
Canal Co. *v.* Chicago & Rock Island R. R. Co., 14 Ill. 314;
Brooklyn City & Newton R. R. Co. *v.* Coney Island, etc.,
R. R. Co., 35 Barb. 364; 33 Barb. 358, 423; Sixth Avenue
R. R. Co. *v.* Kerr, 45 Barb. 138; Jersey City & Bergen
R. R. Co. *v.* Jersey City & Hoboken Horse R. R. Co., 20
N. J. Eq. 61; Metropolitan R. R. Co. *v.* Quincy R. R. Co.,
12 Allen, 262, 269; Commonwealth *v.* Central Passenger
R. R. Co., 52 Pa. St. 506, 518; Pike *v.* Megoun, 44 Mo.
491, 499; 1 Dill. on Mun. Corp., sec. 57; Cooley's Const.
Lim. (2d ed.), secs. 67, 70; St. Louis Gaslight Co. *v.* City
of St. Louis, 46 Mo. 121; State *v.* Binder, 38 Mo. 450;
State *v.* Clarke, 54 Mo. 17.

LEWIS, J., delivered the opinion of the court.

Plaintiff, claiming to be a corporation under the laws of
Missouri, authorized to construct and operate a street rail-
way in the city of St. Louis, alleges that, by an act of the
General Assembly, approved January 16, 1860, certain exclu-
sive privileges were bestowed upon it, the effect whereof
was, and is, a prohibition against the construction of any

street railroad parallel to plaintiff's, and nearer than the third parallel street therefrom ; that defendant, at the filing of the petition, was about to construct a railway on a street parallel to that occupied by plaintiff, and next adjacent to it, for a distance of nine blocks, or about a half mile, to plaintiff's irreparable injury, . etc. Plaintiff, therefore, prayed an injunction restraining and forbidding the construction of such parallel railway, and for general relief. The injunction was refused by the Circuit Court, whereupon plaintiff appealed.

Many questions are raised by defendant touching the plaintiff's corporate existence, the powers of the municipal government of St. Louis, the legislative authority to ratify void or voidable proceedings, the validity of retrospective legislation, and of grants of exclusive privileges. But, as our disposition of this cause will be controlled by an interpretation of the act of January 16, 1860, it seems unnecessary to do more than state briefly our conclusions on these questions, without extended discussion.

The plaintiff was organized in February, 1859, under " An act to authorize the formation of railroad associations, and to regulate the same," approved December 13, 1855, for the purpose of " constructing, maintaining, and operating a railroad for the conveyance of persons and property, to be worked by horse-power only, from Bellefontaine cemetery to the southern boundary of the city of St. Louis, over and along certain streets of said city." By city ordinance No. 4371, approved March 10, 1859, and by an amendatory ordinance, No. 4467, approved June 30, 1859, plaintiff was authorized to construct and operate its railroad from the northern boundary of the city, at its intersection with the Bellefontaine road, upon and over the following streets, to wit : " From said intersection southwardly along the line of and through said road and Broadway, with a double track, to O'Fallon ; thence continuing southwardly, with a double track, down Fifth street to such street, between

Market and Myrtle streets, as the said company might select; thence, with a single track, west on the street so selected to Seventh street; thence south on Seventh street, with a single track, to its junction with Carondelet avenue; thence, with a double track, to the then southern city limit; thence, returning, with a single track, from the said intersection of Carondelet avenue with Seventh street, northwardly along Carondelet avenue and Fifth street, till it strikes the double track of the said road on Fifth street." The first section of "An act concerning street railroads in the city of St. Louis," approved January 16, 1860, was as follows:

"Section 1. The St. Louis Railroad Company, the People's Railway Company, and the Citizens' Railway Company, as hereinbefore organized under the act to authorize the formation of railroad associations, and to regulate the same, approved December 13, 1855, are hereby ratified and confirmed in their respective rights under said law, and the roads now built or commenced, and the gauge of track established by said companies, is sanctioned; and said gauge of four feet ten inches is hereby recognized as the legal gauge of all other street railroads that may be built in the city and county of St. Louis. Said companies shall conform to, and be governed by, said law concerning railroad associations, except as follows: First, said companies shall not be required to carry freight; second, the report made to the city comptroller shall be in lieu of an annual report required to be made to the secretary of state by the law under which said companies organized."

These several acts and proceedings, defendant contends, were of no avail to establish the plaintiff's corporate existence. It is argued that the act of December 13, 1855, had exclusive reference to railroads operated by steam locomotives, between distant points of travel, and that, therefore, the attempted organization of a street railway company under its provisions was absolutely void. The city ordi-

nances are held to have been *ultra vires* and void, because the municipal government could not create a corporation, by mere recognition or otherwise, nor could it grant exclusive privileges or rights of way, in the absence of express charter authority, for any such purpose. The act of January 16, 1860, it is claimed, does not help the matter, because, first, there is no legislative competency to ratify or effectuate that which is not merely voidable, but absolutely void; second, so far as the act undertakes such ratification, it is retrospective, and, therefore, unconstitutional; third, so far as it attempts a grant of the exclusive privileges claimed, it is void as amounting to a surrender of the right of eminent domain.

It is by no means certain that a street railway association could not have been properly organized under the act of December 13, 1855. The general authoritative provision is very comprehensive: "Section 1. Any number of persons, not less than six, may form a company for the purpose of constructing, maintaining, and operating a railroad for public use, in the conveyance of persons and property." By the 7th subdivision of the 29th section, every such company is authorized "to take and convey persons and property on their railroad, by the power or force of steam, or of animals," etc. Many special provisions of the act, it is true, may not be applicable to street railways, because, in their customary uses and methods of operation, no such regulations are required for them. Such, for example, are the provisions for condemnations of right of way. But the same might be said, as to this particular, of any railroad company which should procure all its right of way by purchase or donation, and so never have occasion to use the process of condemnation. Nothing is proved for defendant by this fact, if there yet remain in the act a sufficiency of provisions literally applicable to street railway associations to show that these are within its general purview. This, I think, might be easily proved, but it is unnecessary for the

present purpose.  In the opinion of Allison, J., quoted by defendant's counsel as reported in 3 *Legal Gazette*, 156, the reasoning is so utterly inapplicable to our statutory regulations that it throws no light on the question.  A special point there made is upon the statutory difference between a "railroad" and a "railway."  Our legislation nowhere recognizes any such distinction.

The city ordinances were ineffectual to confer on the plaintiff any original authority to construct or maintain its railway.  That authority being once derived, in the form here claimed, from the General Assembly, the city might, under the general law, give or withhold its assent to the use of the particular streets which the company desired to appropriate.  This power would naturally carry with it a right to impose conditions upon which only the assent would be given.  In this view the chief objections urged by defendant against the ordinances under consideration disappear.

But all the questions thus far considered are, for the purposes of this case, effectually settled by the 1st section of the act of January 16, 1860, already quoted.  We discover no force in defendant's objection that a legislative ratification of that which was void is itself a nullity.  If the doctrine were applicable to the antecedent facts, it would yet be here superseded by the intrinsic force of the act itself, not as a ratification or confirmation, but as an original grant.  It contains all the essential elements of a special act of incorporation.  Each of the three bodies corporate is identified as the same, which, by the name set forth, was " heretofore organized under the act to authorize the formation of railroad associations, and to regulate the same, approved December 13, 1855."  Its powers, privileges, and responsibilities are declared to be those defined in " said law concerning railroad associations," with certain specified exceptions and modifications.  Whatever insufficiency may have existed previously, the plaintiff was

unquestionably a corporate entity, in fact and in law, from and after the passage of that act. The constitutional prohibition against legislative acts of incorporation was not then in existence. Nor is the objection that the act was " retrospective in operation " any more substantial. Sedgwick's definition of a retrospective law, adopted by our Supreme Court in *City* v. *Clemens*, 52 Mo. 144, is : " A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed." We do not find in the record a single fact illustrating any such tendency in this law against the rights of the defendant or of the public. The plaintiff might have complained of it, on that ground, with much better reason. But that corporation, having fully accepted the act, can raise no voice against it.

But, whatever may be the plaintiff's right of access to the courts, as resulting from these conclusions, it cannot have the injunction asked for unless its interpretation of the 3d section of the act of January 16, 1860, is correct. We here find ourselves, with no little hesitation, constrained to attach to the language there used a meaning to which no allusion has been made by the counsel on either side, nor yet by the judge of the Circuit Court in the able written opinion delivered with his decision. The section is as follows :

" Sec. 3. No street railway shall hereafter be constructed in the city of St. Louis nearer to a parallel road than the third parallel street from any road now constructed, or which may hereafter be constructed, except the roads hereinbefore mentioned." [What here follows will be presently copied in another connection. The " roads hereinbefore mentioned" are those of the St. Louis Railroad Company, plaintiff in the present suit, the People's Railway Company, and the Citizens' Railway Company.]

The language thus used brings into view two classes of roads or companies. Those in the first class are forbidden to construct their.roads within a certain distance from the roads comprehended in the second class. Those in the second class are to enjoy the exemption thus secured from proximate competition. The " roads hereinbefore mentioned " are excepted from one of these classes. But from which? By all the laws of grammatical construction, the exception removes them from the second class, and not from the first. To this effect, language could hardly be more fitly chosen. Certain roads are not to be constructed within a specified distance " from any road now constructed, or which may be hereafter constructed, *except* the roads hereinbefore mentioned." If the exception had been inserted next after the words " no street railroad," or the words " city of St. Louis," the effect would have been very different.

It follows from this construction that the plaintiff, instead of being entitled to the exclusive privilege claimed, is expressly denied it by the very words of the statutory exception. We are aware that grammar is too often an unsafe guide to the meaning of a modern statute. But we must follow it, nevertheless, when it leads to no repugnance arising from the subject-matter or the manifest purposes of the law. In the present example we find no such repugnance.

The concluding provisions of the 3d section are as follows : " And, in consideration of the privileges herein granted, the city of St. Louis is hereby expressly empowered to impose and levy such tax and license upon said roads now constructed, or that may hereafter be constructed, as the common council of said city may determine to be just and proper ; and the said city may make such municipal regulations concerning said street railroads as the public interest and convenience may require, except to reduce the

rate of fare charged by said companies, as now fixed by
ordinance of the city of St. Louis.''

It is argued for the plaintiff that these last provisions fix
the interpretation of those in the beginning of the section.
That the expression '' privileges herein granted '' has exclu-
sive reference to what is contained in the section, and not
in other parts of the statute.    That the words '' said roads ''
and '' said companies '' refer only to the three roads or
companies named in the 1st section.    That, consequently,
the '' privilege '' of exemption from proximate competition,
being the only one alluded to, is thus specially provided
for those three companies, including the plaintiff.    But this
mode of interpretation involves too many departures from
well-known rules to be adopted here.    The word '' herein ''
in a statute is universally applied to the whole enactment,
unless expressly limited to some section or subdivision.
But, even if limited to the section in this instance, the
reference to privileges is applied to '' said roads now
constructed, or which may hereafter be constructed,'' etc.
This means that any road, with the exceptions mentioned,
being once actually constructed—no matter at what time,
present or future—shall thenceforth enjoy a freedom from
competition in the form described.    Further, the '' said
roads,'' upon which the tax and license are to be levied, are
expressly the roads—any and all, not three, merely—'' now
constructed, or that may hereafter be constructed.''    The
truth appears to be that, by reason of the exception inter-
posed, the roads '' hereinbefore mentioned '' acquire no
privileges whatever from the 3d section.    But are they
therefore exempt from the tax and license to be levied '' in
consideration of the privileges herein granted?''    Not at
all.    By giving to the word '' herein'' its legitimate scope,
as applying to the entire statute, we secure a harmony
throughout.    The 1st section is devoted to a bestowal of
'' privileges'' on the first three roads '' hereinbefore men-

tioned.'' The 2d section confers certain privileges on the Missouri Railroad Company, and some also upon the Citizens' Railway Company ; and the 3d section grants distinct privileges, as already seen, to every other road '' now constructed, or hereafter to be constructed.'' Thus all are subjected to the tax, and to every one is tendered a consideration therefor. If it be desirable to strengthen this interpretation by exposing the absurdity of its opposite, this may be done by referring to the last clause in the 3d section. Surely it was never intended that the '' said companies '' to be protected against a lowering of their fares by the municipal government should be none but the plaintiff and the two or three others '' hereinbefore mentioned.''

The record shows that the plaintiff's road was '' completed, or nearly so,'' when the act was passed. Why, then, should it be specially excepted from a general monition against roads to be '' *hereafter* constructed in the city of St. Louis?'' When, on the other hand, we treat the exception as attaching itself to certain of the roads '' now constructed, or hereafter to be constructed,'' it becomes easy enough to bring the plaintiff within its meaning.

Looking at this 3d section in the light of its probable aims and purposes, we still find a propriety in excepting the roads specially mentioned out of the class for whose benefit the prohibitory clause was intended, rather than from those against which it was directed. The St. Louis Railroad traversed the city through its whole extent, lengthwise. The People's Railway occupied Fourth street and Chouteau avenue. The Citizens' Railway furnished transportation over the length of Franklin and Easton avenues. These lines lay along the grand arteries of intercommunication between distant parts of the city—defying comparison with any others in point of general importance to the public, and of continually increasing demands upon their carrying capacities. Lessons from the experience of other large cities had long since admonished intelligent legislators of the

necessity of keeping open parallel lines of travel imme-
diately adjacent to the great thoroughfares.   Here was abun-
dant reason why the streets running next to these roads,
should be held free for additional lines of railway ; and
hence, "that the roads hereinbefore mentioned" should be
debarred the benefits of a prohibition against approach, by
possibly competing lines, nearer than the "third parallel
street."   But we can find no satisfactory reason why these
particular companies should enjoy a permission to "here-
after construct" their roads in a proximity to others, which
was to be denied those others with relation to them.

The learned judge below, adopting an interpretation the
reverse of ours, considered the statute as exempting the
plaintiff from the general prohibition against encroaching,
in the form referred to, upon other lines ; as if the reading
were : "No street railroad, except the roads hereinbefore
mentioned, shall hereafter be constructed," etc.   The effect
was, conversely, a protection in plaintiff's behalf against
any such encroachment, if threatened by the defendant.
But, as the general direction of plaintiff's road was from
north to south, and that of defendant's from northwest to
southeast—with a distance of only half a mile, or one-
twentieth of plaintiff's roadway, over which the parallel
track was to be laid—this was held to be not such a paral-
lelism between the two railways as the statute intended to
forbid.   Our interpretation of the statute renders it unnec-
essary to pass upon this branch of the inquiry.   We may
say, however, that, no proofs having been furnished by the
plaintiff of any competition likely to arise in fact over the
half mile in question, the conclusions of the court upon
this point would appear to be sustained upon the principle,
*de minimis non curat lex.*

For aught that appears in this record the judgment below
was right, and is, therefore, affirmed.   All the judges
concur.